THE PEOPLE EX REL. ABNER A. ARMSTRONG, RESPONDENT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Railroad company — when put into possession of lands — Chapter 282, 1854.*

When a railroad has caused lands to be appraised, the appraisal to be confirmed, and the amount awarded deposited in conformity to the general railroad act, the court may make an order to put the railroad into possession, under chapter 282 of the Laws of 1854.

APPEAL from the decisions and proceedings of the Special Term, in proceedings by the New York Central and Hudson River Rail-

road Company, to acquire the lands of the relator, and from an order denying appellant's motion for a writ of assistance.

*Edward Harris*, for the appellant.

*H. V. Howland*, for the respondent.

MULLIN, P. J. :

The only question presented by this appeal, is, whether this court has power to make an order that the railroad company, having procured the lands in question to be appraised, and the appraisal confirmed, in conformity to the general railroad act, be put into possession of the lands so appraised.

Prior to 1854, the power of the court to put the company into possession, was doubted. The legislature, at its session in that year, passed an act,* by the fifth section of which, it is provided as follows, viz. : "In all cases of appraisal under this act and the act hereby amended, where the mode or manner of conducting all or any of the proceedings to the appraisal and the proceedings consequent thereon are not expressly provided for by the statute, the courts before whom such proceedings may be pending shall have the power to make all the necessary orders and give the proper directions to carry into effect the object and intent of this and the aforesaid act; and the practice in such cases shall conform as near as may be to the ordinary practice in such courts."

Without stopping to inquire whether the court had power, independent of the section above quoted, to put a railroad company into possession of land appraised for its use, it seems to us quite clear, that such power is conferred by said section. The object and intention of the general railroad act, and of the act of 1854, were not only to vest the title in the company, but also the possession. Either without the other was of little practical value, and it seems to us incredible, that any body of intelligent men would have made it necessary for a company, after acquiring title, to submit to the delay that would attend an action of ejectment to obtain the possession. Such a litigation would not ordinarily terminate short of the Court of Appeals; and any one at all con-

* Chap. 282, Laws of 1854.

versant with the business of that court for the last quarter of a century, knows that a judgment could not be reached in it, in less than from five to eight years. Such a delay would be fatal to any company.

Before the passage of the act of 1854, it was held at Special Term, in the case of *Niagara Falls and Lake Ontario R. R. Co.* v. *Hotchkiss,* [*] that the railroad company that had obtained an appraisal of lands required for its use, was not entitled to a writ of possession or assistance, to put it in possession, notwithstanding the appraisal had been confirmed, and damages deposited pursuant to the directions of the court. It was at the next session, that the act above cited was passed, and it must have been intended to give to the court the power which had been denied it in the case referred to.

The act was not needed to enable the court to carry out the powers conferred on it by the general railroad act. Such a power was necessarily incident to the grant of the power. But the legislature, probably to remove the doubt created by the decision, passed the act of 1854.

By the fifth section, the court is given the power to make all such orders as may be necessary to carry into effect the objects and intention of the general railroad act, and of the act of 1854, as well in the proceedings preliminary to, as those consequent upon, the appraisal of damages. There are no proceedings consequent upon the appraisal, that required any action of the court, not clearly prescribed by the act, so that legislation was not needed in relation to such subsequent proceedings. It may be asked, why the power to put the company in possession was not conferred in direct terms, instead of the less distinct and positive terms used in the act of 1854. One reason might be assigned for it, and that is, that the legislature was of the opinion that no legislation for that purpose was necessary, and hence passed a provision, sufficiently general in its terms, to embrace not only that power, but such other powers as might be found necessary to perfect the proceedings. The power to put the company into possession, was so essential to the success of the railroad enterprise in the State, that an

[*] 16 Barb., 270.

enlarged, rather than a restricted, construction should be given to the act of 1854.

The order which the court makes for putting the company into possession, is not a writ of assistance; that writ could only issue in certain specified cases, of which this is not one. But the order is in the nature of the writ of assistance; that is, it effects the same object. We are, therefore, of opinion, that the order of the Special Term be reversed, but without costs, as the question is a new one.

The order of confirmation must be amended (the counsel for the company consenting), by striking from it the requirement, that the owner of the land must give notice to the company before he can obtain the money from the bank, and if, within ten days after service of a copy of the order of confirmation as amended, and of this order, possession is not given upon demand made, then and not before, the order to put the company in possession shall be carried into effect.

Present — MULLIN, P. J., SMITH and GILBERT, JJ.

Ordered accordingly.