## MATTER OF NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

*Eminent domain — lands taken for railroad — Statutory construction — writ in nature of writ of assistance.*

By Laws of 1854, chapter 282, section 5, it is provided that in all cases of proceedings for the appraisal of lands taken for a railroad, " the courts before whom the proceedings may be pending shall have the power to make all the necessary orders and give the proper directions to carry into effect the object and intent of this and the aforesaid act. *Held,* to authorize the issue of a writ in the nature of a writ of assistance to put a railroad company in possession of lands taken by proceedings for appraisal.

APPEAL by the New York Central and Hudson River Railroad Company from an order at the special term denying writ to put appellant in possession of lands taken from Abner A. Armstrong for appellant's railroad. The opinion states the only point in controversy.

*Edward Harris,* for appellant.

*H. V. Howland,* for respondent.

MULLIN, P. J. The only question presented by this appeal is whether this court has power to make an order that the railroad

company having procured the lands in question to be appraised and the appraisement confirmed in conformity to the general railroad act be put into possession of the lands so appraised.

Prior to 1854 the power of the court to put the company in possession was doubted. The legislature at its session in that year passed an act (chapter 282 of the Laws of 1854) by the 5th section of which it is provided as follows, viz. :

"In all cases of appraisal under this act and the act hereby amended, where the mode or manner of conducting all or any of the proceedings to the appraisal and the proceedings consequent thereon are not expressly provided for by the statute, the courts before whom such proceedings may be pending shall have the power to make all the necessary orders and give the proper directions to carry into effect the object and intent of this and the aforesaid act, and the practice in such cases shall conform as near as may be to the ordinary practice in such courts."

Without stopping to inquire whether the court had power independent of the section above quoted to put a railroad company into possession of lands appraised for its use, it seems to us quite clear that such power is conferred by said section. The object and intention of the general railroad act and the act of 1854 were not only to vest the title in the company, but also the possession. Either without the other was of so little practical virtue, that it seems to us incredible that any body of intelligent men would have made it necessary for a company, after acquiring title, to submit to the delay that would attend an action of ejectment to obtain the possession. Such a litigation would not ordinarily terminate short of the court of appeals, and any one at all conversant with the business of that court for the last quarter of a century knows that a judgment could not be reached in it in less than from five or eight years. Such a delay wouuld be fatal to any company.

Before the passage of the act of 1854 it was held at special term in the case of *Niagara F. & Lake Ont. R. R. Co.* v. *Hotchkiss*, 16 Barb. 270, that the railroad company that had obtained an appraisal of lands required for its use was not entitled to a writ of possession or assistance to put in possession, notwithstanding the appraisal had been confirmed and damages deposited pursuant to the directions of the court.

It was at the next session that the act above cited was passed, and it must have been intended to give to the court the power

which had been denied it in the case referred to. The act was not needed to enable the court to carry out the powers conferred on it by the general railroad act, such a power was necessarily incident to the grant of those powers. But the legislature, probably to remove the doubt created by the decision, passed the act of 1854.

By the fifth section the court is given the power to make all such orders as may be necessary to carry into effect the object and intent of the general railroad act, and of the act of 1854 as well in the proceedings preliminary to, as in those consequent upon the appraisal of damages. There are no proceedings consequent upon the appraisal that requires any action of the court not clearly prescribed by the act, so that legislation was not needed in relation to such subsequent proceedings.

It may be asked why the power to put the company in possession was not conferred in direct terms, instead of in the less distinct and positive terms used in the act of 1854. One reason might be assigned for it, and that is the legislature was of the opinion that no legislation for that purpose was necessary, and hence it passed a provision sufficiently general in its terms to embrace, not only that power, but such other powers as might be found necessary to perfect the proceedings.

The power to put the company into possession was so essential to the success of the railroad enterprises in the State, that an enlarged rather than a restricted construction should be given to the act of 1854.

The order which the court makes for putting the company into possession is not a writ of assistance — that writ could only issue in specified cases of which this is not one. But the order is in the nature of the writ of assistance, that is, it effects the same object. We are, therefore, of opinion that the order of the special term be reversed, but without costs as the question is a new one; the attorney for the company consenting.

The order of confirmation must be amended by striking from it the requirement that the owner of the land must give notice to the company before he can obtain the money from the bank, and if within ten days after service of a copy of the order of confirmation as amended, and of this order, possession is not given upon demand made, then and not before the order to put the company in possession shall be carried into effect.

*Ordered accordingly.*