## STAPLES v. RYAN.

### (Circuit Court, D. Colorado. July 30, 1894.)

#### No. 3,019.

MECHANICS' LIENS—SALE—VALIDITY.

In an action to enforce a mechanic's lien on defendant's entire property, in which several interveners claimed liens against the same, and one claimed a lien against a portion only, a decree was entered fixing the amount due each claimant, and adjudging that each have a lien therefor against the property described in his complaint, and ordering the entire property to be sold to satisfy the liens. All the parties assented to the decree, and no motion was made to set aside the sale thereunder. *Held*, that the sale was not void on the ground that by such sale the person claiming a lien against only a portion of the property shared in the proceeds from property of which his complaint did not give the court jurisdiction.

On the 1st January, 1885, the Bassick Mining Company held title by United States patent to the Maine lode and mill site, the Triangle lode, the Spring lode, the Frank lode, the Georgia lode and Lookout mill site, the Nemeha lode, and the Lookout lode, situate in Custer county, Colo.

On the 1st of June, 1885, W. D. Schoolfield commenced suit in the district court of Custer county against the Bassick Mining Company and other defendants to enforce a mechanic's lien for work performed upon the lodes in question. In this suit, certain other lien claimants intervened, setting up various claims against the Bassick Mining Company. On June 15, 1885, referees were ordered to take testimony and report on all the lien claims against the company, which resulted in a decree adjudging to certain of the defendants sums according to their proved claims, and ordering the sheriff to sell so much of the property of the company as would pay the several judgments mentioned in the decree. The sheriff advertised all the property of the company for sale at public auction, and it was sold on July 11, 1885, and struck off and sold to Clapp Spooner for $37,599.85, and a certificate of sale issued to the buyer. On June 2, 1885, Vorreiter commenced suit by attachment against the Bassick Mining Company to recover $3,152. Upon this suit the plaintiff obtained judgment, which judgment was assigned to George H. White, who on January 16, 1886, caused execution to issue and levy to be made upon the property of the Bassick Mining Company, and on the same day paid to the sheriff the sum of $37,599.85 and costs, together with interest thereon from July 11, 1885, for the purpose of redeeming, as a judgment creditor, from the sale to Spooner, and then caused the property to be advertised for sale under this execution; but before the time appointed for the sale the Hendrie & Bolthoff Manufacturing Company instituted suit in the same court against the said George H. White and others to restrain and enjoin said sale. A temporary writ of injunction was granted, which injunction was afterwards dissolved, and the suit dismissed. On May 13, 1886, sale was made under the White execution and levy, and the sheriff duly sold the property, and White bought it in for $60,000, paid the money to the sheriff, and received certificate of purchase from him. On May 14, 1886, James Staples, the plaintiff herein, was the assignee of a judgment duly obtained by Ratcliff Bros. against the Bassick Mining Company, and as a judgment creditor, and with the purpose of redeeming from the White sale, paid to the sheriff the sum of $60,016.67, being the sum of the White purchase and interest to date, and thereupon caused the property of the company to be again levied upon and advertised for sale under the said execution. Afterwards, and before the time fixed for this last-mentioned sale, the Union Iron-Works Company, claiming to be a judgment creditor of the Bassick Mining Company, instituted suit in the district court of Custer county against George H. White, James Staples, the Bassick Mining Company, and the sheriff, seeking

to restrain the said sale, and for writ of injunction, which was denied, and appeal taken to the supreme court, who granted a temporary injunction pending the appeal; and on May 18, 1887, the supreme court affirmed the judgment of the district court, and dissolved the said injunction. The Bassick Mining Company sued out a writ of error to the judgment rendered on June 19, 1885, in the Schoolfield suit, to the supreme court of Colorado, and on May 18, 1887, that court reversed the decree of the district court, and remanded the cause; and the sale which had been enjoined in the Union Iron-Works suit was proceeded with by the sheriff, who duly advertised, and sold · to said Staples, as a redemption creditor, and delivered to him his deed for the property. On May 27, 1885, an attachment suit was commenced by Hendrie & Bolthoff Manufacturing Company against the Bassick Mining Company, and on July 29, 1885, judgment was duly rendered in favor of the defend-· ant, and execution issued to the sheriff, which was afterwards returned by him, showing the sale of some personal property, but not enough to satisfy the judgment, a transcript of which judgment was duly recorded in the county. On May 9, 1886, this Hendrie & Bolthoff judgment was duly assigned to Dennis Ryan and Frank G. Brown, a second execution issued, and returned nulla bona; and on May 26, 1887, a third execution issued, and was duly levied, on 31st May, upon all the property above described as belonging to the Bassick Mining Company. On 3d August, 1887, the property of the Bassick Mining Company was sold under the execution levied upon the 31st May, 1887, and bought in by Dennis Ryan for $6,700, and this sum was paid to the sheriff, and he issued his certificate of sale on 3d August, 1887, and on 9th September, 1892, his deed, to said Ryan.

Hugh Butler, for plaintiff.

Thomas, Bryant & Lee, for defendant.

HALLETT, District Judge.　June 1, 1885, W. D. Schoolfield brought suit in the district court of Custer county, Colo., against the Bassick Mining Company and others, to enforce a mechanic's lien on certain mining claims situate in that county, and owned by the said company. Several other lien claimants appeared in the suit, and asserted liens upon the same property for various amounts. One, Thomas Armstrong by name, appeared and asserted a lien for a considerable sum against one of the lode claims only, described in the bill, and called the "Maine Lode." The cause was referred, to enable the several lien claimants to prove up the amount of their respective claims, and all parties, including the principal respondent, the Bassick Mining Company, appeared before the referee. In due time, June 19, 1885, a decree was entered fixing the amount due to each of the claimants, and declaring that each should have a lien upon the property described in his complaint for the sum adjudged to him. In this way, and by the recital that the parties, respectively, should have a lien upon the property described in their complaints, all except Armstrong secured a lien upon all of the property mentioned in the bill, and Armstrong's lien attached to the Maine lode only. The court further decreed that all of the property should be sold by the sheriff of the county to satisfy these liens, and the property was described at length in the decree. The decree seems to have been entered with the assent of all parties, including the Bassick Mining Company, and this applies to the order of sale as fully as to other parts of the decree. No motion was made in the district court at any time to modify or change the decree in any particular; and in the month of July following a sale was made by the sheriff, pursuant to the decree, for a sum suffi-

cient to satisfy all the claimants, including Armstrong, and they were accordingly paid in full.

Upon this statement of facts, it seems clear that the district court of Custer county, under the Schoolfield bill, acquired full jurisdiction of the property described in it, and of all parties to the suit; and that the decree of June 19th, and the sale subsequently made pursuant to its terms, were entirely within the power of the court. The jurisdiction of the court over the property described in the bill did not stand upon the Armstrong petition. Armstrong was an intervener claiming a lien as against one lode described in the bill, and his position in the case could not affect the original complainant, or the jurisdiction of the court upon the original bill. Whether his claim should be allowed or not, the court had the same authority to proceed against the property for satisfying the complainant's demand and the demands of other claimants against the whole property. It may be conceded that Armstrong was entitled to have the property on which he claimed a lien sold in a manner to satisfy his claim, as well as that of the other claimants in the suit; but he did not ask to have it sold in any particular way, nor did he raise any objection to the sale after it was made. As before stated, all parties assented to the decree, and, no motion having been made to set aside the sale, it is fair to assume that all parties also assented to the sale. If the Bassick Mining Company desired to have the sale made in any particular manner, it should have asked the court for an order in that behalf. And so, also, as to Armstrong and all other parties to the suit. If the sale, when made, was not acceptable to the Bassick Mining Company or to Armstrong, or to any other of the claimants, application should have been made to the district court to set it aside. Since all the property was subject to sale for satisfying the several claims in one way or another, the Bassick Mining Company could only ask that it should be sold in a manner to bring the most money; and it has not been claimed, nor does it appear, that the sale was made at a sacrifice, when considered with reference to the value of the property. Upon this, it is impossible to say that the sale was void; and, but for the emphatic declaration of the supreme court to that effect, the question would hardly be worthy of discussion. Mining Co. v. Schoolfield, 10 Colo. 46, 14 Pac. 65. It is believed, however, that the supreme court did not intend to set aside the title acquired by Spooner at the July sale, notwithstanding the statement that it was made without authority. The concluding paragraph of the opinion gives the district court authority to make such order as may be necessary to protect the rights of lien claimants and the purchaser at the sale; and this undoubtedly conferred upon the district court authority to confirm the sale when it should appear that all parties were satisfied, excepting the Bassick Mining Company, and that it had no just ground of complaint. Several sales were made conformably to the statute, at the instance of redeeming creditors, following the July sale to Spooner; and it is believed that the title acquired by Spooner was, by these sales, transmitted to the plaintiff in this suit. Upon a cursory examination of the opinion of

the supreme court, reported in 10 Colo., and 14 Pac., in another case, heard in November, 1887, I was led to believe that the effect of that decision was to avoid all sales made under the Schoolfield decree. Upon a more careful examination of the subject, I am satisfied that the opinion then expressed was wrong. The sale under the Schoolfield decree was perhaps voidable, but it was not void. Concerning the tax title upon which defendant relies, it cannot be necessary to enter into an extensive discussion. The proceedings in assessment and the notice of sale are so far irregular that the title cannot be recognized. I am of the opinion that judgment should go for the plaintiff.